J-S12033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MARK L. FLYTE | : | |
| Appellant | : | No. 2809 EDA 2025 |

Appeal from the PCRA Order Entered August 22, 2025
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0002206-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MARK L. FLYTE | : | |
| Appellant | : | No. 2810 EDA 2025 |

Appeal from the PCRA Order Entered August 22, 2025
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000123-2022

BEFORE: McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED MAY 26, 2026**

Mark L. Flyte appeals *pro se* from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We vacate and remand for further proceedings.

_____

* Retired Senior Judge assigned to the Superior Court.

J-S12033-26

The court summarized the procedural history of this consolidated case[1] as follows:

[] Flyte ple[a]d[ed] guilty on August 29, 2022, in [case number 2206-2021] to [driving under the influence (DUI),] DUI-controlled substance, second offense, a misdemeanor of the first degree. [**See** 75 Pa.C.S. § 3802](d)(1)(i). This offense had an offense gravity score of 5. [**See**] 204 Pa. Code § 303.15 [(7th ed., amend. 6)]. Flyte had a prior record score of 5 based on numerous prior convictions, many of which were other DUIs. The [Pennsylvania] Sentencing Guidelines specified a standard range minimum of 12 to 18 months, with a mitigated range minimum sentence of 9 months and an aggravated range minimum sentence of 21 months. [**See**] 204 Pa. Code § 303.16(a) [(7th ed., amend. 6)]. The statutory mandatory minimum sentence was 90 days. [**See**] 75 Pa.C.S.[] § 3804(c)(2)[(i)]. The maximum sentence [was] 5 years. **See** 75 Pa.C.S.[] §[ ]3803(b)(4)[; 18 Pa.C.S. § 1104(1)]

Flyte [also] ple[a]d[ed] guilty on August 29, 2022, in [case number 123-2022] to DUI-general impairment, third offense, a misdemeanor of the second degree. [**See**] 75 Pa.C.S § 3802(a)(1). This offense has an offense gravity score of 3. [**See**] 204 Pa. Code § 303.15 [(7th ed., amend. 6)]. He had a prior record score of 5 based on numerous prior convictions. The Sentencing Guidelines specified a standard range minimum sentence of 6 to 12 months, with a mitigated range minimum sentence of 3 months. There was no aggravated range because the standard range was 12 months[,] and the maximum sentence was 24 months. **See** 75 Pa.C.S.[] § 3803(a)(2)[; 18 Pa.C.S. § 1104(2)]. The statutory mandatory minimum sentence was 10 days. 75 Pa.C.S.[] § 3804(a)(3)[(i)].

[] Flyte was sentenced on November 28, 2022, to 18 to 60 months [of] incarceration for the DUI-controlled substance conviction and 6 to 24 months [of] incarceration for the DUI-general impairment conviction, to run consecutively to the DUI-controlled substance sentence. Flyte filed motions for reconsideration *nunc pro tunc*,

_____

[1] This Court consolidated both of Flyte's appeals on January 29, 2026. **See** Order, 1/29/26.

- 2 -

which [the court] expressly granted. Flyte asked the court to sentence him "by the DUI standards." Following reconsideration on January 3, 2023, the court maintained the length of Flyte's sentences but slightly modified the sentence for DUI-controlled substance[] by adding a recommendation that Flyte participate in the ["]State Drug Treatment Program,["] which [the court] had previously ordered as part of the sentence for the DUI[-]general impairment conviction.

Flyte filed a direct appeal with the Pennsylvania Superior Court on February 1, 2023, challenging discretionary aspects of his sentence. The Superior Court [affirmed his judgments of sentence] on December 19, 2023. *See Commonwealth v. Flyte*, [311 A.3d 593 (Pa. Super. 2023) (table) (346-47 EDA 2023). Flyte did not seek further review with our Supreme Court].

[Flyte] filed a petition for relief under the [PCRA] on December 23, 2024. The court appointed Lauren Allu, Esq[uire,] as counsel for [] Flyte and gave her leave until March 3, 2025, to file an amended petition. She petitioned for an extension of time. Her petition [seeking more time] was granted[,] and she was given until May 2, 2025, to file a [PCRA] petition. She filed a *Turner*/*Finley*[2] letter on April 28, 2025, stating that after a thorough review of the record[,] she was unable to discern any meritorious claims that would afford [] Flyte relief under [the PCRA]. [The court] gave notice on May 2, 2025, to [] Flyte that [it] intended to dismiss his petition for PCRA relief[ pursuant to Pennsylvania Rule of Criminal Procedure 907,] and [it] granted Attorney Allu's motion to withdraw as [] Flyte's counsel. [] Flyte filed an objection to [the court's] notice and requested appointment of new counsel on May 23, 2025. [The court] obtained and reviewed the transcripts of [] Flyte's guilty plea and sentencing hearings. On August 22, 2025, [the court] dismissed his PCRA petition and denied his motion for appointment of new counsel. The clerk of courts was directed to serve a copy of the order denying his PCRA petition upon [] Flyte by [C]ertified [M]ail.

Flyte's appeal[s were] filed on October 27, 2025[, more than thirty days after the dismissal of his petition.]

___

[2] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

Trial Court Opinion, 12/4/25, at 1-3 (some citation alterations and additions).

Preliminarily, we must ascertain whether we can substantively review Flyte's consolidated appeals given their facially late filing at both trial court docket numbers, approximately thirty days *after* the prescribed deadline. **See** Pa.R.A.P. 903(a) (general rule requiring notices of appeal to be filed "within 30 days after the entry of the order from which the appeal is taken[]"); Pa.R.Crim.P. 910 (establishing that an order dismissing a PCRA petition is a "final order" for purposes of appeal); **see also Commonwealth v. Edrington**, 780 A.2d 721, 725 (Pa. Super. 2001) (indicating that the failure to file a timely notice of appeal divests this Court of jurisdiction). Notwithstanding this general prohibition against late filings, we have declined to quash appeals and have excused an untimely notice of appeal where there has been a breakdown in court operations which caused the failure to timely appeal. **See, e.g.**, **Commonwealth v. Flowers,** 149 A.3d 867, 872 (Pa. Super. 2016); **Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007); **Commonwealth v. Khalil**, 806 A.2d 415, 420 (Pa. Super. 2002).

Here, the record reflects that the envelope containing the PCRA court's dismissal order was erroneously sent to "Mark Flyte #OP6108" instead of "Mark Flyte #QP6108," which plausibly appears to have directly resulted in the envelope being returned to its sender, the Monroe County Prothonotary and Clerk of Courts. Nevertheless, we note that the envelope contains several later-affixed markings that create ambiguity in precisely what happened when

- 4 -

it reached State Correctional Institution Mahanoy (Flyte's place of incarceration) and which indicate: (1) "no inmate number"; (2) "incorrect inmate number"; and (3) "refused."

Ambiguity aside, Flyte, as an incarcerated individual, did not receive timely notice of the order dismissing his PCRA petition due to circumstances out of his control because the letter was returned to sender and did not reach him until after the end of the thirty-day appeal period. Therefore, we conclude that there has been a breakdown in court operations, specifically with the incorrect prisoner number designation, and decline to quash the present consolidated appeals as untimely. Therefore, we proceed to the substantive issues Flyte purports to raise before this Court.

Although not a model of clarity due to the disjointed organization of his brief, Flyte argues:

1. The court erred in denying his repeated requests for new PCRA counsel after original PCRA counsel was permitted to withdraw;

2. The court erred in accepting original PCRA counsel's "deficient" **Turner**/**Finley** letter and permitting that counsel to withdraw; and

3. The court failed to provide a "proper autonomous judicial expression" insofar as it did not provide a complete opinion addressing all seven claims raised in his PCRA petition.

**See** Appellant's Brief at 9-11.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Busanet**,

54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." ***Id.***

As Flyte's first two issues are related, we address them concurrently. Flyte begins by asserting that he argued that his PCRA counsel was ineffective at several junctures: (1) in response to the court's Rule 907 dismissal notice; (2) in a "supplemental" PCRA petition filed on July 17, 2025, after appointed PCRA counsel was permitted to withdraw; and (3) in a motion for substitute PCRA counsel filed on July 28, 2025. ***See*** Appellant's Brief at 22-26. He suggests that these allegations should have prompted the court "to appoint new or substitute PCRA counsel after such claims were made." ***Id.*** at 29; ***see also id.*** at 30 ("The PCRA court was required to appoint new PCRA counsel to investigate the claims of prior PCRA counsel ineffectiveness."). Thereafter, Flyte avers that his PCRA counsel did not go through proper ***Turner/Finley*** protocols, which led to the court improperly allowing her to withdraw as counsel.

First, we note our law regarding ineffective assistance of counsel: in Pennsylvania, counsel is presumed to have rendered effective assistance. ***See Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa. Super. 2017). To overcome this presumption, a petitioner must plead and prove, by a preponderance of the evidence, that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or

inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction such that there is a reasonable probability that the outcome of the proceedings would have been different if not for counsel's action or inaction. **See id.** A failure to satisfy any one of these three prongs causes the entire ineffectiveness claim to fail. **See id.**

Flyte's claim necessarily asserts that his PCRA counsel was ineffective. Thus, under our Supreme Court's decision in **Bradley**, "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021).

Under Pennsylvania Rule of Criminal Procedure 904(C), "when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief." Pa.R.Crim.P. 904(C). Once counsel is appointed, counsel must "either (1) amend the petitioner's *pro se* [p]etition and present the petitioner's claims in acceptable legal terms, or (2) certify that the claims lack merit by complying with the mandates of **Turner/Finley**." **Commonwealth v. Cherry**, 155 A.3d 1080, 1083 (Pa. Super. 2017) (citation and footnote omitted).

It is well-established that

[a] **Turner**/**Finley** brief must: (1) detail the nature and extent of counsel's review of the case; (2) list each issue the petitioner wishes to have reviewed; and (3) explain counsel's reasoning for concluding that the petitioner's issues are meritless.

**Commonwealth v. Knecht**, 219 A.3d 689, 691 (Pa. Super. 2019) (citing

**Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009)).

Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

**Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007) (citing

**Commonwealth v. Friend**, 896 A.2d 607, 615 (Pa. Super. 2006)). If counsel

satisfies the technical requirements of **Turner**/**Finley**, "we then conduct an

independent review of the petitioner's issues." **Knecht**, 219 A.3d at 691

(citing **Commonwealth v. Muzzy**, 141 A.3d 509, 511 (Pa. Super. 2016)

("Where counsel submits a petition and no-merit letter that satisfy the

technical demands of **Turner**/**Finley**, the court—trial court or this Court—

must then conduct its own review of the merits of the case.") (citation and

ellipses omitted)).

It is unclear where Flyte obtained the quote "new counsel should have

been appointed[,]" Appellant's Brief at 29 (citing **Bradley**, 261 A.3d at 398),

because that text does not exist in **Bradley**. Nevertheless, Flyte has failed to

demonstrate any right to additional appointed PCRA counsel after original

PCRA counsel withdraws pursuant to **Turner**/**Finley**, subject, of course, to

the court and counsel following proper procedure in that respect.

However, in the related issue as to counsel's assertedly deficient *Turner*/*Finley* letter, Flyte submits that counsel failed to meet its technical requirements. Specifically, Flyte argues that counsel: (1) failed to send him the letter; (2) failed to list all seven claims contained in his PCRA petition; (3) failed to explain why those seven claims were meritless. *See* Appellant's Brief at 33-41. Accordingly, "the court should have rejected" counsel's letter, requiring her to submit either a proper one or file an amended PCRA petition. *See id.* at 44.

The Commonwealth concedes, and the record reflects, that the *Turner*/*Finley* letter was addressed to Flyte at the wrong zip code, i.e. 17932 rather than 17931. *See Turner*/*Finley* Letter, Certificate of Service; *see also* Commonwealth's Brief at 11 n.5. To summarize the timeline of events: (1) PCRA counsel sent the incorrectly addressed *Turner*/*Finley* letter on April 28, 2025 (and filed an application to withdraw as counsel on that same date)[3];

---

[3] The letter contains numerous typographical and grammatical errors, ***see, e.g.***, *Turner*/*Finley* Letter, 4/28/25, at 4 (unpaginated) ("[Flyte] also contends that trial counsel was ineffective for failing be successful in his appeal."), and cursorily worded conclusions, ***see id.*** at 3 (unpaginated) ("A review of the file and PCRA petition reveal no Constitutional violations. Undersigned Counsel is unable to discern any constitutional violation. Simply put, a thorough review has revealed no Constititional [*sic*] violations."). It is also unclear the precise nature and extent of counsel's review because, for instance, the PCRA court ordered Flyte's guilty plea transcript several months after PCRA counsel was permitted to withdraw, as identified *infra*. The letter also fails to provide any specific legal authority juxtaposed against any of Flyte's PCRA claims and wholly omits any discussion of at least two of them, e.g. that counsel was ineffective for failing to accurately apprise Flyte of the
*(Footnote Continued Next Page)*

(2) the court granted counsel's application to withdraw four days later, on May 2, 2025; (3) the court filed its Rule 907 dismissal notice on that same May 2 date, which further identified that the court had granted counsel's motion to withdraw; (4) after seeking, and being granted, additional time, Flyte filed a handwritten "list of objections" to the court's Rule 907 notice on May 19, 2025, which, *inter alia*, indicated that "PCRA counsel never sent the **Turner**/**Finley** letter, the application to withdraw[,] or the required notice to [him]," and he "has no idea what, if anything[,] was listed in the letter," Rule 907 Response, 5/19/25, at 4, 23; (5) the court ordered a transcript of Flyte's guilty plea colloquy on July 15, 2025; (6) the court ordered, on August 7, 2025, the clerk of courts to send Flyte a copy of PCRA counsel's application to withdraw and corresponding brief from April; and (7) the court dismissed Flyte's petition on August 22, 2025.[4]

With both procedural and substantive defects apparent in the **Turner**/**Finley** letter, it is evident that remand is necessary. At a minimum,

_____

potential sentences he could face as a result of his plea. In short, even if Flyte had conclusively received the **Turner**/**Finley** letter, it is woefully deficient in reasonably listing Flyte's reviewable issues and providing substantive explanation into why those issues are meritless. **See Knecht**, 219 A.3d 689, 691. Counsel's **Turner**/**Finley** letter therefore does not conform with the dictates of **Turner**/**Finley**.

[4] Flyte filed several additional documents *pro se* both prior to and after dismissal of his PCRA petition, such as a September 2, 2025 objection to PCRA counsel's April **Turner**/**Finley** letter, which also sought the appointment of new counsel and leave to amend his original petition.

Flyte, as he has repeatedly stated both before the court and now on appeal, was improperly notified of PCRA counsel's legal analysis and substantive conclusions regarding the unmeritorious nature of his petition, following the grant of counsel's withdrawal motion but prior to the dismissal of the PCRA petition. Therefore, he could not, with any certainty, respond to, or refute, the letter's contents. In effect, he was left without the benefit of his rule-based right to adequate representation or at least the ability to demonstrate that he received inadequate review of the claims he purported to raise in his original petition. Accordingly, we must vacate both the order dismissing his PCRA petition and the order granting counsel's motion to withdraw. On remand, assuming the same disposition as before, counsel must, *inter alia*, send to Flyte (and submit to the court), using appropriate service, an adequate **Turner**/**Finley** letter[5] that is reasonably responsive to the assertions contained in Flyte's PCRA petition.[6]

Orders dismissing counsel and PCRA petition vacated.[7] Case remanded. Jurisdiction relinquished.

_____

[5] The letter should, at a minimum, reference applicable authority and cite to the record, including, but not limited to, direct citations to portions of the relevant transcripts, where appropriate.

[6] Of course, counsel is always free to file an amended PCRA petition on Flyte's behalf.

[7] As we are remanding the matter, we do not analyze, nor rule upon, Flyte's last claim nor the merits of his underlying PCRA claims.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/26/2026